**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------- X
                                                         :
In re                                                    :    Chapter 11
                                                         :
American Roads LLC, et al.,¹                             :    Case No. 13-12412 (BRL)
                                                         :
                                  Debtors.               :    Jointly Administered
                                                         :
-------------------------------------------------------- X
```

**FINAL ORDER PURSUANT TO SECTIONS 105, 361, 362, AND 363 OF**
**THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 4001**
**AND 9014 (I) AUTHORIZING DEBTORS TO USE CASH**
**COLLATERAL AND (II) GRANTING ADEQUATE PROTECTION**

**("FINAL CASH COLLATERAL ORDER")**

Upon the motion [Docket No. 8] (the "Motion"),[2] of American Roads LLC and certain of

its affiliates, as debtors and debtors in possession in the above-captioned cases (collectively, the

"Debtors") for entry of interim and final orders under sections 105, 361, 362 and 363(c) of title

11 of the United States Code, 11 U.S.C. §§101-1532 (the "Bankruptcy Code"), Rules 2002, 4001

and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules");

and the Local Rules of the United States Bankruptcy Court for the Southern District of New

York (the "Local Rules"), (a) authorizing the use of Cash Collateral on an interim basis effective

as of the Petition Date through the time of the final hearing on the Motion (the "Final Hearing");

---

[1]        The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification
number are:  Alabama Black Warrior Parkway, LLC [2479] ("Warrior"), Alabama Emerald Mountain Expressway
Bridge, LLC [2480] ("Emerald"), Alabama Toll Operations, LLC [2483] ("Alabama Toll"), American Roads
Holding LLC [3194] ("HoldCo"), American Roads LLC [3196] ("American Roads"), American Roads
Technologies, Inc., Central Alabama River Parkway, LLC [2478] ("Central"), Detroit Windsor Tunnel LLC [1794]
("Detroit Windsor"), DWT, Inc. [7182] ("DWT") The Baldwin County Bridge Company L.L.C. [8933] ("Baldwin,"
collectively with Alabama Toll, Detroit Windsor, Central, Emerald and Warrior, the "Operating Subs").  For the
purpose of these cases, the service address for the Debtors is:  100 East Jefferson Avenue, Detroit, Michigan 48226.

[2]        Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

(b) granting and affirming the adequate protection being given to the Collateral Agent; and

(c) scheduling the Final Hearing to consider entry of a final order (the "Final Order") authorizing

the Debtors' use of Cash Collateral; and upon the *Declaration of Neal Belitsky in Support of*

*First Day Motions and Applications in Compliance with Local Rule 1007-2*, filed concurrently

with the Motion; and the Court having found that the relief requested in the Motion is in the best

interests of the Debtors, their estates, their creditors and other parties in interest; and the Court

having found that the Debtors' notice of the Motion and the opportunity for a hearing on the

Motion was appropriate and no other notice need be provided; and the Court having reviewed the

Motion and having heard the statements in support of the relief requested therein at a hearing

before the Court on July 26, 2013 (the "Interim Hearing"); and the Court having entered the

*Interim Order Pursuant to Sections 105, 361, 362, and 363 of the Bankruptcy Code and*

*Bankruptcy Rules 2002, 4001, and 9014 (I) Authorizing Debtors to Use Cash Collateral, (II)*

*Granting Adequate Protection and (III) Scheduling a Final Hearing* [Docket No. 34] (the

"Interim Order"); and the Court having determined that the legal and factual bases set forth in the

Motion and at the Interim Hearing establish just cause for the relief granted herein; and upon all

of the proceedings had before the Court; and after due deliberation and sufficient cause

appearing therefor, it is HEREBY FOUND AND CONCLUDED THAT:

A.    Disposition.  The Motion is granted on a final basis in accordance with the terms

of this Final Order.  Any objections to the Motion with respect to the entry of the Final Order

that have not been withdrawn, waived or settled are hereby denied and overruled.

B.    Commencement of Cases.  On July 25, 2013 (the "Petition Date"), each of the

Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy

Code.  The Debtors are in possession of their properties and continuing to operate their

2

businesses as debtors and debtors in possession under sections 1107 and 1108 of the Bankruptcy

Code. No official committee of unsecured creditors (a "Committee") has been appointed in

these Chapter 11 Cases.

        C.      Jurisdiction and Venue. This Court has jurisdiction over the Chapter 11 Cases

and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334, and the *Amended Standing Order of*

*Reference* from the United States District Court for the Southern District of New York dated

January 31, 2012. Consideration of the Motion constitutes a core proceeding pursuant to 28

U.S.C. § 157(b)(2). The Court may enter a final order consistent with Article III of the United

States Constitution. Venue of the Chapter 11 Cases in this District is proper pursuant to 28

U.S.C. §§ 1408 and 1409. The predicates for the relief sought herein are sections 105, 361, 362

and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014, and Local Rule 4001-

2.

        D.      Adequate Notice. On the Petition Date, the Debtors filed the Motion with this

Court and pursuant to Bankruptcy Rules 2002, 4001 and 9014, and the Local Rules, the Debtors

provided notice of the Motion and the Interim Hearing by electronic mail, facsimile, hand

delivery or overnight delivery to the following parties and/or to their respective counsel as

indicated below: (a) the Office of the United States Trustee; (b) counsel to The Bank of New

York Mellon, as indenture trustee, securities intermediary and collateral agent (the "Collateral

Agent"); (c) counsel to Syncora Guarantee Inc. ("Syncora"); (d) creditors holding the thirty (30)

largest unsecured claims as set forth in the consolidated list filed with the Debtors' petitions; and

(e) all parties requesting service in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002

(collectively, the "Notice Parties"). The Debtors provided notice of the Final Hearing by mailing

a copy of the Interim Order to the Notice Parties and to any party that requested notice pursuant

to Bankruptcy Rule 2002, and mailing the proposed form of this Final Order to such parties.

Given the nature of the relief sought in the Motion, this Court concludes that the foregoing notice

was sufficient and adequate under the circumstances and complies with the Bankruptcy Code,

the Bankruptcy Rules, the Local Rules, the Interim Order and any other applicable law, and no

further notice relating to this proceeding and the hearing on this Motion is necessary or required.

  E. <u>Prepetition Liens</u>.  To secure the prepetition obligations under the Financing

Documents (as defined below) (the "<u>Prepetition Obligations</u>"), the Debtors other than American

Roads Technologies, Inc. (the "<u>Applicable Debtors</u>") granted the Collateral Agent, on behalf of

the Secured Parties (as defined in the Common Agreement), valid first priority liens (the

"<u>Prepetition Liens</u>") upon and in substantially all of the Applicable Debtors' assets, and all

proceeds and products of such assets (the "<u>Prepetition Collateral</u>").

  F. <u>Applicable Debtors' Stipulations</u>.  Without prejudice to the rights of any other

party (but subject to the limitations thereon contained in paragraph 10(a) of this Final Order), the

Applicable Debtors acknowledge, admit, represent, stipulate and agree that:

  (i) Pursuant to the terms of that certain Indenture, dated December 19, 2006

(the "<u>Initial Indenture</u>"), and that certain First Supplemental Indenture, dated December 19, 2006

(the "<u>First Supplemental Indenture</u>"), by and among American Roads, the Collateral Agent, in its

capacity as indenture trustee, collateral agent and securities intermediary, and Syncora in its

capacity as insurer, American Roads issued certain Series G-1 Senior Secured Bonds in the

aggregate original principal amount of $198 million (the "<u>G-1 Bonds</u>").

  (ii) Pursuant to the terms of the Initial Indenture and that certain Second

Supplemental Indenture, dated December 19, 2006 (the "<u>Second Supplemental Indenture</u>";

together with the Initial Indenture and the First Supplemental Indenture, the "<u>Indentures</u>"), by

4

and among American Roads, the Collateral Agent, and Syncora, American Roads issued certain Series G-2 Senior Secured Bonds in the aggregate original principal amount of $298 million (the "G-2 Bonds"; together with the G-1 Bonds, the "Bonds").

        (iii)     Under the terms of the Indentures and certain related financing and security documents, including without limitation the terms of that certain Guaranty Agreement (the "Guaranty Agreement"), dated December 19, 2006, by and among each of the Operating Subs and the Collateral Agent, American Roads' obligations under the Bonds are secured by the Prepetition Collateral.

        (iv)     In conjunction with the issuance of the G-1 Bonds, Syncora issued that certain Financial Guaranty Insurance Policy, Policy No. CA03493A (the "G-1 Policy"), pursuant to which Syncora insures certain obligations of American Roads under the G-1 Bonds.

        (v)     In conjunction with the issuance of the G-2 Bonds, Syncora issued that certain Financial Guaranty Insurance Policy, Policy No. CA03494A (the "G-2 Policy"; together with the G-1 Policy, the "Bond Policies"), pursuant to which Syncora insures certain obligations of American Roads under the G-2 Bonds.

        (vi)     American Roads and Barclays Bank PLC, as successor counterparty (the "Hedge Counterparty"), are party to that certain ISDA Master Agreement and Schedule, dated December 19, 2006 (the "G-1 Swap"), pursuant to which, among other things, American Roads hedged certain interest rate payment obligations under the G-1 Bonds.

        (vii)     American Roads and the Hedge Counterparty, as successor counterparty, are party to that certain ISDA Master Agreement and Schedule, dated December 19, 2006 (the "G-2 Swap"; together with the G-1 Swap, the "Swaps"), pursuant to which, among other things, American Roads hedged certain interest rate payment obligations under the G-2 Bonds.

5

(viii)    Syncora issued two financial guaranty insurance policies CA03493B and CA03494B (the "Swap Policies"; together with the Bond Policies, the "Policies"), pursuant to which Syncora guaranteed American Roads' obligations to the Hedge Counterparty under the Swaps.

(ix)    Syncora and American Roads are party to that certain Insurance and Reimbursement Agreement, dated December 19, 2006 (the "Insurance and Reimbursement Agreement"), pursuant to which, among other things, Syncora agreed to issue the Policies and American Roads agreed to pay certain premiums and reimburse payments by Syncora under the Policies.

(x)    Pursuant to the terms of, among other things, (i) the Policies, (ii) the Swaps, (iii) that certain Agreement as to Certain Undertakings, Common Representations, Warranties, Covenants and Other Terms (the "Common Agreement"), dated December 19, 2006, by and among American Roads, the Collateral Agent, and Syncora, among others, and (iv) that certain Intercreditor, Collateral Agency and Account Agreement, dated December 19, 2006, (the "Collateral Agency Agreement"), by and among the Applicable Debtors, the Collateral Agent, and Syncora, among others, Syncora is the "Instructing Senior Creditor," as such term is defined in the Common Agreement.  The Indentures, the Guaranty Agreement, the Policies, the Bonds, the Swaps, the Common Agreement, the Collateral Agency Agreement, the Insurance and Reimbursement Agreement and all other financing, security and related documents executed in furtherance of American Roads' issuance of the Bonds and Swaps shall be referred to herein as the "Financing Documents".

(xi)    After good faith, arms' length negotiations, the Applicable Debtors, Syncora and others entered into that certain Restructuring and Plan Support Agreement, dated

July 17, 2013 (the "RPSA"), in which the parties thereto agreed to engage in various transactions to restructure the Applicable Debtors' obligations under the  Financing Documents (collectively, the "Restructuring Transactions").

   (xii) On June 28, 2013, the Applicable Debtors failed to pay the premium due on the Policies, and that failure continued for more than ten (10) business days, which constituted an event of default under the Financing Documents (the "Existing Default").

   (xiii) Based on the Existing Default, Syncora, as insurer under the Swap Policies (a) exercised its right to terminate the Swaps and accelerate all amounts due thereunder, (b) paid $333,951,361 under the Swap Policies in respect of termination payments due under the Swaps, and (c) as a result of the foregoing, Syncora holds an "Enhancement Liability" (as defined in the Financing Documents) relating to payments made by Syncora under the Swap Policies in the aggregate amount of $$333,951,361, which amount is secured by the Prepetition Liens (the "Swap Policies Claim").

   (xiv) As of the Petition Date, the Swap Policies Claim (a) constitutes the legal, valid, binding and unavoidable obligation of the Applicable Debtors, secured by the Prepetition Liens, and (b) is not, and shall not be, subject to any avoidance, disallowance, disgorgement, reductions, setoff, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges of any kind or nature under the Bankruptcy Code or any other applicable law or regulation.

   (xv) The Prepetition Liens (a) constitute valid, binding, enforceable, nonavoidable, and properly perfected liens on the Prepetition Collateral that, prior to entry of this Final Order, were senior in priority over any and all other liens on the Prepetition Collateral; (b) are not subject to avoidance, reductions, recharacterization, subordination (whether equitable,

contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under

the Bankruptcy Code or any other applicable law or regulation; and (c) are subject and

subordinate only to the Carve-Out (as defined below).

(xvi)    Neither the Collateral Agent nor Syncora is or shall be deemed to be a

control person or insider of the Debtors by virtue of any of the actions taken by such party in

respect of or in connection with the Financing Documents or the Restructuring Transactions.

(xvii)   As of the Petition Date, the Debtors have not brought, are not aware of,

and have, no claims, objections, challenges, causes of action, including without limitation

avoidance claims under chapter 5 of the Bankruptcy Code, against Syncora or the Collateral

Agent arising out of or related to the Financing Documents or otherwise.

(xviii)  As of the Petition Date, other than as permitted under the Financing

Documents, there were no liens on or security interests in the Prepetition Collateral other than

the Prepetition Liens.

(xix)    As of the Petition Date, the fair market value of the Collateral (as defined

below) is substantially less than the amount of the Swap Policies Claim.  As a result, the Swap

Policies Claim constitutes a substantially undersecured claim.

G.    Cash Collateral.  For purposes of this Final Order, the term "Cash Collateral"

shall mean and include all "cash collateral" as defined in Bankruptcy Code section 363, in which

the Collateral Agent has a lien or security interest (including any adequate protection liens or

security interests), in each case whether existing on the Petition Date, arising pursuant to this

Final Order, or otherwise, including all cash contained at any time in the accounts listed on

Exhibit B annexed hereto (collectively, the "Reserve Accounts").  The Debtors represent and

stipulate that all of the Applicable Debtors' cash, cash equivalents, negotiable instruments,

investment property, and securities, including the cash, cash equivalents, negotiable instruments, investment property and securities in the Reserve Accounts, constitute Cash Collateral of the Collateral Agent.

H.    <u>Use of Cash Collateral</u>.  The Applicable Debtors have a need to use Cash Collateral, to operate their businesses and effectuate a reorganization of their businesses, which will be used in accordance with the terms of this Final Order and subject to the Approved Budget (as defined below).  Without the use of Cash Collateral, the Applicable Debtors will not have sufficient liquidity to be able to continue to operate their businesses.  The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are necessary in order to obtain such consent or nonobjection of certain parties, and to adequately protect the consenting and non-consenting parties' interests in the Prepetition Collateral.  Absent authorization to continue to use Cash Collateral, the Applicable Debtors' estates and their creditors would suffer immediate and irreparable harm.

I.    <u>Sections 506(c) and 552(b)</u>.  In light of the Collateral Agent's agreement to subordinate its liens and claims to the Carve-Out, to permit the use of the Prepetition Collateral and to permit the use of its Cash Collateral for payments made in accordance with the Approved Budget and the terms of this Final Order, the Collateral Agent is entitled to (a) a waiver of any "equities of the case" claims under Bankruptcy Code section 552(b) and (b) a waiver of the provisions of Bankruptcy Code section 506(c).

J.    <u>Good Cause</u>.  Good cause has been shown for entry of this Final Order.  The Applicable Debtors have a need to continue to use Cash Collateral in order to continue to operate their businesses in the ordinary course in accordance with the Approved Budget, preserve the

value of the Applicable Debtors' businesses, and effectuate a reorganization of their businesses. The Applicable Debtors' use of Cash Collateral has been deemed sufficient to meet the Applicable Debtors' postpetition liquidity needs, subject to the terms of this Final Order and the Approved Budget.  Good, adequate and sufficient cause has, therefore, been shown for the grant of the relief sought in the Motion, as modified herein.

K.    <u>Consent to Use of Cash Collateral</u>.  The Collateral Agent, as directed by Syncora in its capacity as Instructing Senior Creditor, has consented to the Applicable Debtors' use of Cash Collateral solely on the terms and conditions set forth in this Final Order, and in accordance with the Approved Budget.

L.    <u>Good Faith</u>.  Based on the record before the Court, the terms of the use of the Cash Collateral as provided in this Final Order are fair, reasonable, are the best available under the circumstances, have been fully disclosed, reflect the Applicable Debtors' exercise of prudent business judgment consistent with their fiduciary duties, have been negotiated at arms' length and in good faith and are in the best interests of the Applicable Debtors, their estates and their creditors.

Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor: **IT IS HEREBY FOUND, DETERMINED, ORDERED, ADJUDGED AND DECREED THAT**:

1.    <u>Motion Granted</u>.  The Motion is granted on a final basis, subject to the terms set forth herein.  Any objections to the Motion that have not previously been withdrawn or resolved are hereby overruled on their merits.  This Final Order shall be valid, binding on all parties in

interest, and fully effective immediately upon entry notwithstanding the possible application of

Bankruptcy Rules 6004(h), 7062 and 9014.

2.      Authorization to Use Cash Collateral.  Subject to the terms of this Final Order,

upon entry of this Final Order, the Applicable Debtors are authorized to use Cash Collateral in

which the Collateral Agent may have an interest, in accordance with the terms, conditions, and

limitations set forth in this Final Order and the Approved Budget (including any Permitted

Variance).  Any dispute in connection with the use of Cash Collateral shall be heard by this

Court.

3.      Approved Budget.

(a)      The budget annexed hereto as Exhibit A (the "Approved Budget") hereby

is approved.  Cash Collateral used under this Final Order shall be used by the Applicable Debtors

only in accordance with the Approved Budget and this Final Order.  Subject to the Carve-Out,

the Collateral Agent's consent to the Approved Budget shall not be construed as consent to the

use of any Cash Collateral beyond the Termination Date, regardless of whether the aggregate

funds shown on the Approved Budget have been expended.

(b)      Upon the written consent of the Collateral Agent (as directed by Syncora

in its capacity as Instructing Senior Creditor) and the Applicable Debtors, and without further

order of the Court, the Approved Budget may be amended from time to time.  The Applicable

Debtors shall provide a copy of any revised budget to counsel to the United States Trustee and

the Committee, if any.

4.      Permitted Variance.  Notwithstanding the Approved Budget, so long as no

Termination Event has occurred, the Applicable Debtors shall be authorized to use Cash

Collateral in accordance with the Approved Budget, in an amount that would not cause the

Applicable Debtors to use Cash Collateral for operating disbursements in an aggregate amount

greater than one-hundred and ten percent (110%) of the operating disbursements in the Approved

Budget for any calendar month period (a "Permitted Variance").  If the aggregate amount of

Cash Collateral actually used by the Applicable Debtors, measured on a monthly basis, is less

than the aggregate amount of Cash Collateral available for use by the Applicable Debtors in the

Approved Budget during such period, then for purposes of the Permitted Variance, the

Applicable Debtors may carry over any such unused amount to the future periods in the

Approved Budget.

     5.     Termination of Cash Collateral Usage.

     (a)     The Applicable Debtors' right to use the Cash Collateral shall terminate

immediately upon three (3) business days following delivery of written notice (the "Default

Notice," and such period of time, the "Default Notice Period") by the Collateral Agent to the

Applicable Debtors, the United States Trustee, the Committee (if any) and any other official

committee appointed in the Chapter 11 Cases, of the occurrence of an Event of Default

hereunder unless such Event of Default has been cured during the Default Notice Period (the

"Termination Date").

     (b)     The Applicable Debtors' authority to use Cash Collateral shall

automatically terminate upon the occurrence of the Termination Date, unless waived in writing

by the Collateral Agent (as directed by Syncora in its capacity as Instructing Senior Creditor), all

without further order of the Court.  Upon the occurrence of the Termination Date, all Adequate

Protection Obligations (as defined below) shall be immediately due and payable, subject to the

Carve-Out, and the Collateral Agent shall have all rights and remedies provided in this Final

Order, in the Financing Documents, and under applicable law.  Notwithstanding anything herein

or the occurrence of the Termination Date, all of the rights, remedies, benefits, and protections provided to the Collateral Agent and Syncora under this Final Order shall survive the Termination Date.

(c)    In the event the Collateral Agent sends a Default Notice to the Applicable Debtors, the Applicable Debtors shall be and hereby are precluded from seeking (i) the right to use Cash Collateral over the objection of the Collateral Agent and (ii) any injunctive, equitable or other form of relief that would have the effect of preventing the Collateral Agent (as directed by Syncora in its capacity as Instructing Senior Creditor) from exercising its rights hereunder, whether under section 105 of the Bankruptcy Code or otherwise; provided, however, that the Applicable Debtors shall in all circumstances have the right to contest whether an Event of Default has occurred or been cured during the Default Notice Period.

6.    <u>Events of Default</u>.  The occurrence of any of the following shall constitute an event of default (each, an "<u>Event of Default</u>"):

(a)    the Debtors' failure to comply with any of the terms or conditions of this Final Order;

(b)    the Debtors' filing of an application, motion or other pleading seeking to amend, modify, or supplement this Final Order without the prior written consent of the Collateral Agent (as directed by Syncora in its capacity as Instructing Senior Creditor); or the date of entry of any order reversing, amending, supplementing, staying, vacating or otherwise modifying this Final Order without the prior written consent of the Collateral Agent (as directed by Syncora in its capacity as Instructing Senior Creditor);

(c)    the date that any material provision of this Final Order shall for any reason cease to be valid and binding or the Debtors shall so assert in any pleading filed in any court;

(d)      the Debtors file an application for the approval of any superpriority claim or any lien in the Chapter 11 Cases which is *pari passu* with or senior to the Adequate Protection Liens, Superpriority Claim or Prepetition Liens without the prior written consent of the Collateral Agent (as directed by Syncora in its capacity as Instructing Senior Creditor);

(e)      unless otherwise agreed to in writing by the Collateral Agent (as directed by Syncora in its capacity as Instructing Senior Creditor), the occurrence of a Termination Event under the RPSA;

(f)      the dismissal of any or all of the Chapter 11 Cases or the conversion of any or all of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; or the Debtors' filing of a motion or other pleading seeking the dismissal or conversion of any or all of the Chapter 11 Cases pursuant to Bankruptcy Code section 1112 or otherwise;

(g)      the appointment or election of a trustee or an examiner with expanded powers in any or all of the Chapter 11 Cases or the application by the Debtors for, consent to, or acquiesce in, any such appointment without the prior written consent of the Collateral Agent (as directed by Syncora in its capacity as Instructing Senior Creditor);

(h)      the Debtors' commencement of an action against the Collateral Agent or Syncora with respect to the Swap Policies Claim or the Prepetition Liens.

7.      <u>Restriction on Use of Cash Collateral</u>.

(a)      No Prepetition Collateral or proceeds thereof, including without limitation any of the Applicable Debtors' existing or future Cash Collateral, shall directly or indirectly be used for any payments, expenses or disbursements of the Applicable Debtors except for (i) those payments, expenses and/or disbursements that are expressly permitted under this Final Order or other order entered by this Court and in all cases which are consistent with the Approved Budget;

14

(ii) compensation and reimbursement of fees and expenses payable pursuant to Bankruptcy Code sections 330 and 331 to professionals or professional firms retained by the Debtors pursuant to Bankruptcy Code sections 327, 328, 330, 331, or 503 (the "Debtor Professionals") and permitted and awarded pursuant to an order of this Court, subject to an aggregate cap of $2,500,000 (the "Debtor Professional Fee Cap"); and (iii) compensation and reimbursement of fees and expenses not to exceed $250,000 (the "Committee Professional Fee Cap")[3], which are payable pursuant to Bankruptcy Code sections 330 and 331 and payable to any attorneys, advisors, investment bankers and other professionals retained by the Committee (the "Committee Professionals"), if any, and permitted or awarded pursuant to an order of this Court; provided, however, that the foregoing shall not be construed as consent to the allowance of any of the amounts referred to in the preceding clauses (ii) or (iii) and shall not affect the right of any party in interest to object to the allowance and payments of any such amounts.

(b)    Subject to the Carve-Out, no administrative expense claims, including fees and expenses of professionals, shall be charged or assessed against or recovered from the Prepetition Collateral or Collateral or attributed to the Collateral Agent with respect to its interest in the Prepetition Collateral or Collateral pursuant to the provisions of Bankruptcy Code section 506(c) through, or on behalf of the Applicable Debtors, without the prior written consent of the Collateral Agent, and no such consent shall be implied from any action, inaction or acquiescence by, either with or without notice to, the Collateral Agent.  Except as set forth herein, the Collateral Agent has not consented or agreed to the use of the Prepetition Collateral or the Collateral and nothing contained herein shall be deemed a consent by the Collateral Agent to any

---

[3]    For the avoidance of doubt, in no event shall the sum of fees and expenses paid to the Committee Professionals during the Chapter 11 Cases before and, if applicable, after a Termination Date exceed the Committee Professional Fee Cap.

charge, lien, assessment or claim against the Prepetition Collateral or the Collateral.  The

Collateral Agent shall not be subject in any way whatsoever to the equitable doctrine of

"marshaling" or any similar doctrine with respect to the Collateral or the Prepetition Collateral.

   (c) No Prepetition Collateral or proceeds thereof, Cash Collateral, or any

portion of the Carve-Out may be used directly or indirectly by the Debtors, any official

committee appointed in these Chapter 11 Cases, including the Committee, and any trustee

appointed in the Chapter 11 Cases or any successor cases, or any other person, party or entity to

(i) object, contest, or raise any defense to the validity, perfection, priority, extent, or

enforceability of the Swap Policies Claim including the liens with respect thereto or any action

purporting to do any of the foregoing; (ii) assert or prosecute any Claims and Defenses (as

defined below) against Syncora or the Collateral Agent or their respective predecessors-in-

interest, agents, affiliates, representatives, attorneys, or advisors or any action purporting to do

the foregoing; (iii) prevent, hinder, or otherwise delay Syncora's or the Collateral Agent's

assertion, enforcement, or realization on the Swap Policies Claim, Cash Collateral, the

Prepetition Liens, or the Adequate Protection Obligations in accordance with the Final Order;

(iv) seek to modify any of the rights granted to Syncora or the Collateral Agent hereunder;

(v) apply to the Court for authority to approve the superpriority claims or grant of liens on the

Collateral or any portion thereof that are senior to, or on parity with, the Adequate Protection

Liens, Superpriority Claims or Prepetition Liens, or (vi) seek to pay any amount on account of

any claims arising prior to the Petition Date unless such payments are provided for by other

orders of this Court, agreed to in writing by the Collateral Agent (as directed by Syncora in its

capacity as Instructing Senior Creditor) or provided for by the Approved Budget; provided,

however, that up to $100,000 of Cash Collateral in the aggregate may be used to pay the allowed

fees and expenses of counsel retained by the Committee, if any, incurred directly in the

investigation of the Claims and Defenses (as those terms are defined in paragraph 11(a) hereof).

8.    <u>Adequate Protection</u>.  Subject only to the Carve-Out, the Collateral Agent, for the

exclusive benefit of Syncora, is hereby granted the following Adequate Protection Obligations

(as defined below), in each case to secure an amount equal to the aggregate post-petition

diminution in value (which shall be calculated in accordance with Bankruptcy Code section

506(a)) in the interests of the Collateral Agent and Syncora in the Prepetition Collateral

(including the Cash Collateral), including without limitation any such diminution in value

resulting from (a) depreciation, physical deterioration, use, sale, loss or decline in market value

of the Prepetition Collateral; and/or (b) imposition of the automatic stay under section 362 of the

Bankruptcy Code or otherwise:

(a)    valid, enforceable, nonavoidable and fully perfected, first-priority

postpetition security interests in and liens (effective and perfected upon the date of entry of this

Final Order and without the necessity of execution by the Applicable Debtors of mortgages,

security agreements, pledge agreements, financing statements, and other agreements or

instruments) on any Collateral that is not subject to (i) valid, perfected, non-avoidable and

enforceable liens in existence on or as of the Petition Date or (ii) valid and unavoidable liens in

existence immediately prior to the Petition Date that are perfected after the Petition Date as

permitted by section 546(b) of the Bankruptcy Code (collectively, the "<u>Unencumbered

Property</u>"), including without limitation any causes of action under sections 544, 545, 547, 548

or 550 of the Bankruptcy Code (collectively, the "<u>Avoidance Actions</u>"), and any proceeds or

property recovered in respect of any Avoidance Action;

(b)    valid, enforceable, nonavoidable and fully perfected, junior priority

security interests in and postpetition liens (effective and perfected upon the date of entry of this

Final Order and without the necessity of execution by the Applicable Debtors of mortgages,

security agreements, pledge agreements, financing statements, and other agreements or

instruments) on all Collateral (other than property described in clause (a) or (c) of this paragraph

8) that is subject to (i) valid, perfected and unavoidable liens in existence immediately prior to

the Petition Date or (ii) valid and unavoidable liens in existence immediately prior to the Petition

Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy

Code, which valid, perfected and unavoidable liens are senior in priority to the security interests

and liens in favor of the Collateral Agent;

(c)    valid, enforceable, nonavoidable and fully perfected, first-priority

postpetition security interests in and liens on all Collateral (other than the property described in

clause (a) or (b) of this paragraph 8); provided, that such security interests and liens shall not

prime (i) any valid, perfected and unavoidable liens and security interests in existence

immediately prior to the Petition Date that are held by or granted to any person other than the

Collateral Agent or (ii) valid and unavoidable liens and security interests in existence

immediately prior to the Petition Date that are perfected after the Petition Date as permitted by

section 546(b) of the Bankruptcy Code and that are held by or granted to any person other than

the Collateral Agent (collectively, with those liens described in clauses (a) and (b) of this

paragraph 8, the "Adequate Protection Liens"); and

(d)    first-priority superpriority administrative expense claims under

Bankruptcy Code section 507(b) (the "Superpriority Claim," and together with the Adequate

Protection Liens, the "Adequate Protection Obligations") with priority in payment over any and

all administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code

sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d),

552, 1113 and 1114, whether or not such expenses or claims arise in the Chapter 11 Cases or in

any subsequent cases or proceedings under the Bankruptcy Code that may result therefrom.

(e)    For purposes of this Final Order, the term "Collateral" shall include,

without limitation, any and all prepetition and postpetition property, assets and interests in

property and assets of the Applicable Debtors (or any successor trustee or other estate

representative in the Chapter 11 Cases or successor cases), and all "property of the estate"

(within the meaning of the Bankruptcy Code) of the Applicable Debtors (or any successor trustee

or other estate representative in the Chapter 11 Cases or successor cases), of any kind or nature

whatsoever, real or personal, tangible or intangible or mixed now existing or hereafter acquired

or created, whether existing prior to the Petition Date or arising after the Petition Date, including

without limitation, all accounts, inventory, contracts, investment property, instruments,

documents, chattel paper, patents, trademarks, copyrights, licenses, general intangibles, payment

intangibles, machinery and equipment, real property (including all facilities), capital stock of

each subsidiary of the Applicable Debtors, deposit accounts, commercial tort claims and other

causes of action, Cash Collateral, Avoidance Actions and proceeds thereof and all proceeds of

any of the collateral described above.  The Adequate Protection Liens and Superpriority Claim

shall be subject and subordinate only to, solely upon the occurrence of a Termination Event,

payment of the Carve-Out in accordance with the terms and conditions set forth in this Final

Order.  For the avoidance of doubt, the use of Cash Collateral, for any purpose, shall constitute

post-petition diminution in value of the Collateral Agent's interest in the Collateral and shall

entitle the Collateral Agent to dollar-for-dollar Adequate Protection Liens in accordance with the

terms of this Final Order.  Nothing herein shall impair or modify the application of Bankruptcy

Code section 507(b) in the event that the adequate protection provided to the Collateral Agent

hereunder is insufficient to compensate for any post-petition diminution in value of the interests

of the Collateral Agent in the Prepetition Collateral during the Chapter 11 Cases or any successor

cases.

9.      Reporting Requirements.  Notwithstanding any procedures or requirements under

the Financing Documents, within five (5) business days after the calendar month, and each

calendar month thereafter, the Applicable Debtors shall prepare and furnish to counsel for the

Collateral Agent and counsel for Syncora, in form and substance reasonably acceptable to the

Collateral Agent and Syncora, a monthly report of receipts, disbursements, and a reconciliation

of actual receipts and disbursements with those set forth in the Approved Budget, on a line-by-

line basis, showing any percentage variance to the proposed corresponding line item of the

Approved Budget (a) for such monthly period and (b) on a cumulative basis for the period of the

Approved Budget or such other budget period, as applicable, and showing a calculation of the

covenants and the Applicable Debtors' compliance or noncompliance, which shall be certified by

the VP—Finance or chief executive officer (the "Budget Reconciliation").  Beginning on the

date that is five (5) business days after the calendar month, and each calendar month thereafter,

the Applicable Debtors shall also provide counsel to the Collateral Agent and counsel to Syncora

with (i) a list of any and all prepetition claims paid during such period, each with a notation

regarding which order authorized such payments, and (ii) the cumulative total of all prepetition

claims paid, each with a notation regarding which order authorized such payments (the "Other

Reporting Obligations").  Such Budget Reconciliation and Other Reporting Obligations shall be

provided to counsel to the Collateral Agent and counsel to Syncora so as actually to be received

within five (5) business days following the end of each applicable period.  The Applicable

Debtors and their professionals shall make themselves available to discuss the Budget

Reconciliation and any other reports provided pursuant to this Final Order with the professionals

retained by the Collateral Agent and Syncora on such basis as may be reasonably requested by

the Collateral Agent or Syncora.

        10.     <u>Carve-Out</u>.

        (a)     As used in this Final Order, "<u>Carve-Out</u>" means (i) the unpaid fees of the

Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) (and any

applicable interest relating thereto); (ii) the reasonable fees and expenses up to $100,000 incurred

by a trustee appointed in the Debtors' cases under section 726(b) of the Bankruptcy Code;

(iii) fees incurred prior to the Termination Date in an amount not to exceed the Debtor

Professional Fee Cap and the Committee Professional Fee Cap less any amount already paid to

the Debtor Professionals and the Committee Professionals, respectively, to the extent allowed at

any time by the Bankruptcy Court, whether by interim order, procedural order or otherwise;

(iv) all unpaid fees, disbursements, costs and expenses incurred prior to the Termination Date by

the Debtor Professionals or Committee Professionals, to the extent allowed at any time by the

Bankruptcy Court, whether by interim order, procedural order or otherwise; and (v) fees and

expenses of the Debtor Professionals in an aggregate amount not to exceed $250,000 (the

"<u>Termination Carve-Out</u>"), which are incurred on and after the Termination Date, provided such

fees and expenses are allowed by the Bankruptcy Court, each subject to the rights of any party in

interest to object to the allowance of any such fees and expenses.  For the avoidance of doubt,

and without limiting the foregoing, so long as the Termination Date shall not have occurred,

(i) the Applicable Debtors are authorized, subject to applicable court orders, to pay any expense

that falls within the Carve-Out; and (ii) Cash Collateral may be used for (x) payment of fees and

expenses of the Debtor Professionals and the Committee Professionals up to the Debtor

Professional Fee Cap and the Committee Professional Fee Cap, respectively, each as allowed and

payable under Bankruptcy Code sections 330 and 331, (y) payments contemplated to be made

pursuant to "first day" orders pursuant to "first day" motions in form and substance reasonably

acceptable to the Collateral Agent and Syncora and (z) payments otherwise agreed to by the

Collateral Agent and Syncora, provided, however, that in each case such payments shall be in

accordance with the Approved Budget or otherwise in accordance with this Final Order.

      (b)     No liens, claims, interests or priority status, other than the Carve-Out,

having a lien or administrative priority superior to or *pari passu* with that of the Prepetition

Liens, the Superpriority Claim or Adequate Protection Liens granted by this Final Order, shall be

granted while any portion of the Swap Policies Claim remains outstanding or in effect without

the prior written consent of the Collateral Agent (as directed by Syncora in its capacity as

Instructing Senior Creditor).

      11.    <u>Investigation Period</u>.

      (a)     The Adequate Protection Liens, the Superpriority Claim and the

Prepetition Liens shall be senior to, and no Collateral or Prepetition Collateral may be used to

pay, any claims for services rendered by any Debtor Professionals (or any successor trustee or

other estate representative in the Chapter 11 Cases or any successor cases), any creditor or party

in interest, any official committee or any other party in connection with the assertion of or

joinder in any claim, counterclaim, action, proceeding, application, motion, investigation,

objection, defense or other contested matter against Syncora or the Collateral Agent in

connection with (i) invalidating, setting aside, avoiding, subordinating, recharacterizing, or

challenging, in whole or in part, any claims or liens arising under or with respect to the

Financing Documents, the Swap Policies Claim, the Prepetition Liens, the Collateral, or the

Prepetition Collateral, or (ii) preventing, hindering, or delaying, whether directly or indirectly,

Syncora's or the Collateral Agent's assertions or enforcement of their liens, security interests, or

realization upon any of the Collateral or the Prepetition Collateral.  Notwithstanding anything

herein to the contrary, the Committee shall have until the earlier of (i) five (5) business days

prior to the date first set for a confirmation hearing in the Chapter 11 Cases and (ii) sixty (60)

days after the entry of this Final Order (the "Investigation Termination Date") to investigate the

validity, perfection, enforceability, and extent of the Prepetition Obligations and Prepetition

Liens and any potential claims of the Debtors or their estates against Syncora or the Collateral

Agent in respect of the Swap Policies Claim and Prepetition Liens, "lender liability" claims and

causes of action, any actions, claims or defenses under chapter 5 of the Bankruptcy Code or any

other claims and causes of action (all such claims, defenses and other actions described in this

paragraph are collectively defined as "Claims and Defenses").

       (b)      Any Claim or Defense must be made by a party in interest with standing

who timely and properly commences an adversary proceeding on or before the Investigation

Termination Date.  If no such action is properly filed on or before the Investigation Termination

Date, all holders of claims and interests as well as other parties in interest shall be forever barred

from bringing or taking any such action, and the Applicable Debtors' stipulations made herein

and the release set forth in this Final Order shall be binding on all parties in interest.  If such an

action is timely and properly brought, any claim or action that is not brought shall be forever

barred.

(c)    Nothing in this Final Order vests or confers on any committee (including the Committee) or any other party standing or authority to bring, assert, commence, continue, prosecute, or litigate any cause of action belonging to the Debtors or their estates, including without limitation the Claims and Defenses.

12.    <u>Limitation of Liability</u>.  Nothing in this Final Order shall in any way be construed or interpreted to impose or allow the imposition upon the Collateral Agent or Syncora any liability for any claims arising from the prepetition or post-petition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

13.    <u>Cash Management</u>.  The Debtors shall not seek approval of any cash management system without the prior approval of the Collateral Agent and Syncora, which consent shall not be unreasonably withheld, and any order approving such cash management system shall be reasonably acceptable to the Collateral Agent and Syncora.  The Collateral Agent and Syncora acknowledge consent to the Debtors' use of a cash management system that is consistent with the cash management system described in the Debtors' "first day" motion to approve its cash management system.

14.    <u>Equities of the Case</u>.  In light of the subordination of its liens to the Carve-Out, the Collateral Agent shall be entitled to all benefits of Bankruptcy Code section 552(b), and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to the Collateral Agent with respect to the proceeds, product, offspring, or profits of any of its Collateral.

15.    <u>Additional Perfection Measures</u>.

(a)    Pursuant to this Final Order, the Adequate Protection Liens are, and are deemed to be, valid, enforceable, and perfected liens, effective as of the Petition Date, and

(notwithstanding any provisions of any agreement, instrument, document, the Uniform

Commercial Code, or any other relevant law or regulation of any jurisdiction) no further notice,

filing, possession, control, or other act shall be required to effect such perfection, and all liens on

any deposit accounts or securities shall, pursuant to this Final Order be, and they hereby are

deemed to confer "control" for purposes of sections 8-106, 9-104, and 9-106 of the New York

Uniform Commercial Code as in effect as of the date hereof or similar applicable laws in favor

of the Trustee).

(b)    The Applicable Debtors or the Collateral Agent shall not be required to

enter into or obtain landlord waivers, mortgagee waivers, bailee waivers, warehouseman waivers

or other waiver or consent to enter into control agreements, or to file or record financing

statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments

in any jurisdiction (including, trademark, copyright, trade name or patent assignment filings with

the United States Patent and Trademark Office, Copyright Office or any similar agency with

respect to intellectual property, or filings with any other federal agencies/authorities), or obtain

consents from any licensor or similarly situated party-in-interest, or take any other action in

order to validate and to perfect the Adequate Protection Liens.

(c)    The Collateral Agent may, but shall not be obligated to, obtain consents

from any landlord, licensor or other party in interest, file mortgages, financing statements,

notices of lien or similar instruments, or otherwise record or perfect such security interests and

liens, in which case:

(i)    all such documents shall be deemed to have been recorded and

filed as of the time and on the date of entry of this Final Order; and

(ii)      no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder.

(d)      In lieu of obtaining such consents or filing any such mortgages, financing statements, notices of lien or similar instruments, the Collateral Agent may, but shall not be obligated to, file a true and complete copy of this Final Order in any place at which any such instruments would or could be filed, together with a description of Collateral or Prepetition Collateral, as applicable, and such filings by the Collateral Agent shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien or similar instruments had been filed or recorded at the time and on the date of entry of this Final Order.

16.      <u>Automatic Stay Modified</u>.  The automatic stay provisions of Bankruptcy Code sections 362 are hereby vacated and modified to the extent necessary to permit the Collateral Agent, to exercise, upon the occurrence of the Termination Date, all rights and remedies provided for hereunder, and to take any or all of the following actions without further order of or application to this Court:  (a) terminate the Applicable Debtors' use of Cash Collateral; (b) declare all Adequate Protection Obligations owed to the Collateral Agent to be immediately due and payable; (c) set off and apply immediately any and all amounts in accounts maintained by the Applicable Debtors with the Collateral Agent against the Adequate Protection Obligations and Prepetition Obligations owed to the Collateral Agent and otherwise enforce rights against the Collateral for application towards the Adequate Protection Obligations and the Swap Policies Claim; (d) take any and all actions necessary to take control of all Cash Collateral; and (e) take any other actions or exercise any other rights or remedies permitted under this Final Order or applicable law to effect the repayment and satisfaction of the Adequate Protection Obligations and the Swap Policies Claim owed to the Collateral Agent.  The rights and remedies of the

Collateral Agent specified herein are cumulative and not exclusive of any rights or remedies that it may otherwise have.

17.    <u>Collateral Rights</u>.

(a)    If the Collateral Agent (as directed by Syncora in its capacity as Instructing Senior Creditor) shall at any time exercise any of its rights and remedies hereunder or under applicable law in order to effect payment or satisfaction of the Adequate Protection Obligations or the Swap Policies Claim, or to receive any amounts or remittances due hereunder, including, foreclosing upon and selling all or a portion of the Collateral (all solely to the extent not inconsistent with the requirements of this Final Order), the Collateral Agent shall have the right without any further action or approval of this Court to exercise such rights and remedies as to all or such part of the Collateral as the Collateral Agent (as directed by Syncora in its capacity as Instructing Senior Creditor) may determine.  No holder of a lien shall be entitled to object on the basis of the existence of such lien to the exercise by the Collateral Agent of its respective rights and remedies under this Final Order or other applicable law to effect satisfaction of the Swap Policies Claim or Adequate Protection Obligations owed to the Collateral Agent or to receive any amounts or remittances due hereunder.  All proceeds and payments delivered to the Collateral Agent pursuant to this paragraph 17 may be applied to the Swap Policies Claim or Adequate Protection Obligations, and in no event shall the Collateral Agent be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any such collateral or otherwise.

18.    <u>Collateral Agent Authorization</u>.  For the avoidance of doubt and notwithstanding any provision of the Financing Documents, the Collateral Agent is hereby authorized to make any and all account transfers requested by the Applicable Debtors in accordance with the

27

Approved Budget, and is further authorized to take any other action reasonably necessary to implement the terms of this Final Order.

19.    <u>Credit Bid Rights</u>.  The Collateral Agent (as directed by Syncora in its capacity as Instructing Senior Creditor) shall have the right to "credit bid" the Swap Policies Claim under the Financing Documents and the Adequate Protection Liens granted hereunder during any sale of any of the Collateral, including in connection with sales occurring pursuant to Bankruptcy Code section 363 or included as part of any plan subject to confirmation under Bankruptcy Code section 1129.

20.    <u>Successors and Assigns</u>.  The provisions of this Final Order shall be binding upon the Debtors, the Collateral Agent, and each of their respective successors and assigns, and shall inure to the benefit of the Debtors, the Collateral Agent and each of their respective successors and assigns including, without limitation, any trustee, responsible officer, estate administrator or representative, or similar person appointed in a case for the Debtors under any chapter of the Bankruptcy Code.  The provisions of this Final Order shall also be binding on all of the Debtors' creditors, equity holders, and all other parties in interest including any official committee appointed in the Chapter 11 Cases.

21.    <u>Binding Nature of Agreement</u>.  The rights, remedies, powers, privileges, liens, and priorities of the Collateral Agent under this Final Order shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation order), by any plan of reorganization or liquidation in the Chapter 11 Cases, by the dismissal or conversion of the Chapter 11 Cases or in any subsequent case under the Bankruptcy Code unless and until the Swap Policies Claim has first been indefeasibly paid in full in cash and completely satisfied in accordance with the Financing Documents.

22.    <u>No Modification of Final Order</u>.  The Debtors irrevocably waive any right to seek

any amendment, modification or extension of this Final Order without the prior written consent

of the Collateral Agent (as directed by Syncora in its capacity as Instructing Senior Creditor) and

no such consent shall be implied by any action, inaction or acquiescence of the Collateral Agent.

23.    <u>No Waiver</u>.  This Final Order shall not be construed in any way as a waiver or

relinquishment of any rights that the Collateral Agent may have to bring or be heard on any

matter brought before this Court.

24.    <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of

this Final Order is without prejudice to, and does not constitute a waiver of, expressly or

implicitly (a) the Collateral Agent's right to seek any other or supplemental relief in respect of

the Debtors, including the right to seek additional adequate protection; (b) any rights of the

Collateral Agent under the Bankruptcy Code or applicable nonbankruptcy law.  Nothing

contained herein shall be deemed a finding by the Court or an acknowledgement by the

Collateral Agent that the adequate protection granted herein does in fact adequately protect the

Collateral Agent against any diminution in value of their interests in the Prepetition Collateral.

25.    <u>No Waiver by Failure to Seek Relief</u>.  The delay or failure of the Collateral Agent

to seek relief or otherwise exercise its rights and remedies under this Final Order, the Financing

Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the

rights thereunder, or otherwise of the Collateral Agent.

26.    <u>Priority of Terms</u>.  To the extent of any conflict between or among (a) the Motion,

any other order of this Court, or any other agreements, on the one hand; and (b) the terms and

provisions of this Final Order, on the other hand, the terms and provisions of this Final Order

shall govern.

27.    <u>No Third Party Beneficiary</u>.  Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

28.    <u>Survival</u>.  Except as otherwise provided herein, (a) the protections afforded to the Collateral Agent under this Final Order, and any actions taken pursuant thereto, shall survive the entry of an order (i) dismissing any or all of the Chapter 11 Cases or (ii) converting any or all of the Chapter 11 Cases into cases under chapter 7 of the Bankruptcy Code, and (b) the Adequate Protection Obligations shall continue in the Chapter 11 Cases, in any such successor case or after any such dismissal.  Except as otherwise provided herein, the Adequate Protection Obligations shall maintain their priorities as provided in this Final Order, and not be modified, altered or impaired in any way by any other financing, extension of credit, incurrence of indebtedness, or any conversion of any or all of the Chapter 11 Cases into cases pursuant to chapter 7 of the Bankruptcy Code or dismissal of any or all of the Chapter 11 Cases, or by any other act or omission until the Swap Policies Claim is indefeasibly paid in full in cash or receive treatment as otherwise agreed to by the Collateral Agent (as directed by Syncora in its capacity as Instructing Senior Creditor).

29.    <u>Interim Order</u>.  Except as specifically amended, supplemented or otherwise modified by this Final Order, all of the provisions of the Interim Order shall remain in full force and effect and are hereby ratified by this Final Order.  In the event of any inconsistency between the provisions of this Final Order and the Interim Order, the provisions of this Final Order shall govern.  In addition, in the event the Court determines at a hearing to be held on August 28, 2013 or such later date as the Court may order that the Ad Hoc Committee of Bondholders (the "<u>Ad Hoc Committee</u>") has standing to be heard in these cases, then the Ad Hoc Committee shall be

permitted at such hearing or such later date as the Court may determine to present and argue its

Limited Objection of the Ad Hoc Committee of Bondholders to Entry of the Proposed Form of

Final Order Pursuant to Sections 105, 361, 362 and 363 of the Bankruptcy Code and Bankruptcy

Rules 2002, 4001, and 9014 (I) Authorizing Debtors to Use Cash Collateral and (II) Granting

Adequate Protection [Docket No. 78] filed on August 20, 2013, and after such hearing, including

the arguments of any other parties in interest who are entitled to be heard in reply to the Ad Hoc

Committee, the Court may make such further modifications to the Final Order in respect of the

foregoing Limited Objection as and to the extent the Court deems appropriate in the

circumstances.  Neither the Ad Hoc Committee nor any member thereof may move for or

otherwise request an adjournment or continuation, or support the efforts of any other party,

directly or indirectly, to move for or otherwise request an adjournment or continuation, of the

foregoing August 28, 2013 hearing on the issue of standing.

    30.    Retention of Jurisdiction.  This Court shall retain jurisdiction over all matters

pertaining to the implementation, interpretation and enforcement of this Final Order.

    31.    Binding Effect of Final Order.  The terms of this Final Order shall be binding on

any trustee appointed under Chapter 7 or Chapter 11 of the Bankruptcy Code.

    32.    Waiver of Requirement to File Proofs of Claim.  The Collateral Agent shall not be

required to file proofs of claim with respect to the Swap Policies Claim.


Dated:   August 21, 2013                      /s/Burton R. Lifland
         New York, New York                   Honorable Burton R. Lifland
                                              United States Bankruptcy Judge