**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X

In re

American Roads LLC, *et al.*,[1]

                Debtors.

Chapter 11

Case No. 13-12412 (BRL)

Jointly Administered

------------------------------------------------------------X

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
By:    Sean A. O'Neal
        Louis A. Lipner

– and –

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178
Telephone: (212) 696-6065
Facsimile: (212) 697-1559
By:    Steven J. Reisman
        Jason P. Gottlieb

*Attorneys for the Debtors and Debtors in Possession*

HUNTON & WILLIAMS LLP
200 Park Avenue, 53rd Floor
New York, New York 10166
Telephone: (212) 309-1000
Facsimile: (212) 309-1100
By:    Peter S. Partee, Sr.
        Michael P. Richman

*Attorneys for Syncora Guarantee Inc.*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are: Alabama Black Warrior Parkway, LLC [2479], Alabama Emerald Mountain Expressway Bridge, LLC [2480], Alabama Toll Operations, LLC [2483], American Roads Holding LLC [3194], American Roads LLC [3196], American Roads Technologies, Inc. [2016], Central Alabama River Parkway, LLC [2478], Detroit Windsor Tunnel LLC [1794], DWT, Inc. [7182] and The Baldwin County Bridge Company L.L.C. [8933]. For the purpose of these cases, the service address for the Debtors is: 100 East Jefferson Avenue, Detroit, Michigan 48226.

13-12412-brl    Doc 127    Filed 08/28/13    Entered 08/28/13 16:52:54    Main Document
                                    Pg 2 of 8

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
By:    Larry J. Nyhan
        Bojan Guzina
        Andrew F. O'Neill
        Allison Ross Stromberg

– and –

787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
By:    Nicholas K. Lagemann

*Attorneys for the Ad Hoc Committee of Bondholders*

Before: Hon. Burton R. Lifland
        United States Bankruptcy Judge

### BENCH MEMORANDUM AND ORDER FINDING THE BONDHOLDERS LACK STANDING TO PARTICIPATE IN THESE CHAPTER 11 PROCEEDINGS

Before the Court is the threshold issue of whether the ad hoc committee of bondholders (the "Bondholders"), consisting of the holders of $162.5 million in principal amount of certain senior secured bonds (the "Bonds") issued by American Roads LLC ("American Roads", and together with its affiliated debtors, the "Debtors"), has standing to participate in these chapter 11 proceedings.

The Court confronts a unique financing structure known as an "insured unitranche." Typically, a debtor's creditors will fall into several tranches, each corresponding to different liens. Here, however, all of the secured creditors' claims are secured by the same lien, through the same trustee and collateral agent, on the terms set forth in prepetition financing contracts. Those contracts, therefore, are the sole basis of these creditors' interests and rights, which the

2

creditors have curtailed as part of a *quid pro quo* with Syncora Guarantee Inc. ("Syncora"), the monoline insurer fully securing all of the creditors' claims. That curtailment of rights and interests is clearly enunciated in the relevant contracts in several unambiguous, enforceable "no action" clauses and, therefore, forecloses the Bondholders' participation in these proceedings.

Accordingly, and for the additional reasons set forth below, the Court finds that the Bondholders do **NOT** have standing.

First, the Bondholders suggest that they have standing because nothing in any of the relevant financing documents constitutes a waiver of the right to appear and be heard in these proceedings. However, relevant case law and several contractual provisions support finding that the Bondholders have waived their right to appear and that waiver is enforceable.

In these proceedings, the parties agree that the financing documents are governed by New York Law. *See, e.g.*, Supplemental Declaration of Neal Belitsky in Further Support of Confirmation of the Debtors' Joint Prepackaged Chapter 11 Plan (Dkt. No. 113), Ex. I "Collateral Agency Agreement," § 11.06.

"No action" clauses are frequently included in indentures to limit suits arising therefrom. Under New York law, such clauses are "strictly construed," and have been "enforced in a variety of contexts in both federal and state courts." *See McMahan & Co. v. Wherehouse Entm't, Inc.*, 65 F.3d 1044, 1050–51 (2d Cir. 1995) (citation and quotation omitted). Courts applying New York law have repeatedly recognized the importance of enforcing such provisions. *See, e.g.*, *SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.*, No. 12-CV-1011, 2013 WL 1233544, at *11 (E.D.N.Y. Mar. 27, 2013) (noting that no-action clauses "protect against the exercise of poor judgment by a single bondholder or a small group of bondholders, who might otherwise bring a suit against the issuer that most bondholders would consider not to be in their collective

economic interest"); *Howe v. Bank of New York Mellon*, 783 F. Supp.2d 466, 473 (S.D.N.Y. 2011) ("It is well established that a 'no action' clause bars claims by an individual bondholder who fails to comply with the conditions precedent recited therein."); *Friedman v. Chesapeake & Ohio Ry. Co.*, 261 F. Supp. 728, 731 n.7 (S.D.N.Y. 1966) ("If . . . every holder of a bond or bonds were free to sue at will for himself and for others similarly situated, the resulting harassment and litigation would be not only burdensome but intolerable.").

Likewise, and notwithstanding the broad standing provisions of Bankruptcy Code section 1109, bankruptcy courts have routinely held that a party lacks standing to take an action in bankruptcy in violation of a "no action" clause. *See, e.g.*, *In re Innkeepers USA Trust*, 448 B.R. 131, 144 (Bankr. S.D.N.Y. 2011) (holding plaintiff lacked standing to object to a bid procedure order as it was "contractually bound by the 'no action' clause of the C-6 Servicing Agreement"); *In re Ion Media Networks, Inc.*, 419 B.R. 585, 597 (Bankr. S.D.N.Y. 2009) (holding that holder of second lien debt lacked standing to object to plan confirmation because it "agreed to remain silent in the event of a chapter 11 case"); *In re Enron Corp.*, 302 B.R. 463, 477 (Bankr. S.D.N.Y. 2003) (holding that certain creditors did not have standing to bring an adversary proceeding against borrower, since the financial agreements provided that only the collateral agent could file any action or institute any proceeding).

Here, the relevant provisions of the financing documents make clear that the limitations on the Bondholders' collective action rights and the delegation of authority to Syncora are substantial. Indeed, in the main, the characterizations by Debtors' counsel of the relevant contractual provisions are persuasive.[2] The relevant pre-petition contracts provide: (1) Syncora controls the enforcement of rights and remedies upon an event of default; (2) Syncora has the

---

[2] For ease of reference, those characterizations are included in a chart in the attached exhibit, which Debtors' counsel prepared and this Court supplemented with the Bondholders' characterizations of the same provisions. *See* attached Exhibit A.

authority to give all instructions to the Trustee and the Collateral Agent; (3) Bondholders cannot institute or direct proceedings with respect to the enforcement of the terms of the financing documents without the consent of Syncora; (4) Syncora has been appointed as the "sole holder" and the "sole representative" for all purposes under the financing documents; and (5) Bondholders are precluded from challenging or enforcing the lien without Syncora's consent. As such, "[t]he specific, unambiguous language of several provisions, read in the context of the agreements as a whole," convinces this Court that individual bondholders are precluded from enforcing rights or remedies against the debtor or the collateral. *Beal Sav. Bank v. Sommer*, 8 N.Y.3d 318, 321 (2007).

The Bondholders argue that none of the above-mentioned provisions waived their rights to participate in these chapter 11 proceedings. They argue that "no action" provisions are narrowly construed and absent express language forbidding them from objecting to a bankruptcy plan, their actions would fall outside the "no action" provisions. While the Bondholders are correct that "no action" provisions must be clear, the Bondholders are incorrect to suggest that these provisions must contain specific language barring participation in bankruptcy proceedings. *See In re Innkeepers*, 448 B.R. at 144 n.18 (holding that a provision which barred a certificate holder from "institut[ing] any suit, action or proceeding in equity or at law upon or under or with respect to this Agreement or any Mortgage Loan" unless certain conditions precedents were satisfied, prevented a certificate holder from objecting to a bid procedures order in a bankruptcy case); *see also In re Globo Comunicacoes e Participacoes S.A.*, 317 B.R. 235, 249 (S.D.N.Y. 2004) (intimating that a "no action" provision barring a noteholder from "bring[ing] any action arising out of or relating to [the issuers] obligations to [noteholders]" would suffice to prohibit a noteholder from filing an involuntary petition against the issuer) (quotation omitted). Here,

5

while the "no action" clauses do not specifically mention bankruptcy plans, the provisions unambiguously prevent bondholders from asserting any claims to collateral or enforcing any rights against the Debtors, whether or not the Debtors are in insolvency proceedings.  Thus, no matter how the Bondholders characterize their actions and position to avoid falling within the "no action" clauses, they seek to enforce individual rights, remedies and actions, which is directly contrary to their bargained-for contractual agreements delegating and waiving such rights in favor of Syncora and the collateral agent.

Second, with respect to whether the instant proceedings involve a "Bondholder Reserve Action," the Bondholders have also asserted that the discharge of the Bonds under the Debtors' proposed chapter 11 plan and Syncora's vote in favor of the plan are prohibited without the consent of all bondholders.  Specifically, they argue that the discharge and the vote each constitute a "Bondholder Reserved Action" as defined in section 1002 of the base indenture.  Therefore, Syncora must obtain consent of the Bondholders in order to discharge the Bonds and vote on the plan.  Thus, the Bondholders assert Syncora has not met this obligation, and cannot do so because the Bondholders will not accede to the discharge or Syncora's vote.

However, this argument is unpersuasive.  The base indenture provides for "Bondholder Reserved Actions" under section 1002, which is titled "Supplemental Indentures Requiring Consent of Bondholders."  That section indicates which "supplemental indentures" constitute those "Bondholder Reserved Actions" that require the approval of all bondholders.  These actions are designed to prevent Syncora from unilaterally amending the financing documents in a way specified in the definition, such as by reducing the principal or rate of interest on a bond.

Here, neither the discharge of the Bonds under the plan nor Syncora's vote in favor of the plan is a supplemental indenture requiring bondholder consent.  Indeed, neither constitute an

amendment to the financing documents or bear on the principal or interest rate of the bonds. Accordingly, the "Bondholder Reserved Action" section, which is intended to prevent such unilateral amendments, is not applicable.

Finally, with respect to the permissibility of subordination agreements limiting the participation of potential parties to a bankruptcy, the Bondholders argue that even if the Court determines that the financing documents delegate to Syncora the rights to which the Bondholders are entitled under the Bankruptcy Code, courts have refused to enforce the terms of subordination agreements that are inconsistent with the provisions of the Bankruptcy Code, other than terms affecting the priority of distributions.

Courts, however, have upheld pre-petition inter-creditor agreements waiving a creditor's bankruptcy rights where the creditors are sophisticated parties fully aware of the implications of such a waiver. *See In re Ion Media Networks*, 419 B.R. at 593–97 (upholding a pre-bankruptcy inter-creditor agreement in which a junior lender agreed to waive its right to dispute the validity of the lien where the parties were sophisticated parties who entered into the inter-creditor agreement aware of the implications of that waiver); *see also In re GSC, Inc.*, 453 B.R. 132, 164 n.47 (Bankr. S.D.N.Y. 2011) (finding that in certain circumstances courts have upheld a creditor's prepetition waiver of bankruptcy rights); *In re Erickson Retirement Cmtys, LLC*, 425 B.R. 309, 314–16 (Bankr. N.D. Tex. 2010) (finding that sophisticated commercial lenders which, pursuant to terms of subordination agreements that barred them from filing any actions or pursuing any remedies to collect on their claims or enforce their rights until senior indebtedness had been paid in full, had knowingly and intelligently waived standing to file motion for appointment of examiner in jointly administered chapter 11 cases); *In re Aerosol Packaging*

7

*LLC,* 362 B.R. 43, 47 (Bankr. N.D. Ga. 2006) (upholding the assignment of voting rights from a junior lienholder to a senior lienholder in a prepetition inter-creditor agreement).

Here, the parties are clearly sophisticated and acknowledged this on the record. Moreover, these proceedings do not involve an ordinary multi-tranche financing where secured creditors with different liens on the same property have entered into a subordination agreement to order the priority of their respective property interests. Rather, there is only one lien securing the financing documents. As such, the Bondholders are part of an "insured unitranche," and any rights they may have to monetize or exert control over the collateral are undergirded only by contractual entitlements, not separate property interests.

## CONCLUSION

For the reasons set forth above, the Court finds that the Bondholders do NOT have standing to participate in these Chapter 11 proceedings. The Court, accordingly, DENIES the Bondholders' motion to adjourn the confirmation hearing and OVERRULES the Bondholders' objections to the disclosure statement and confirmation.

**IT IS SO ORDERED.**

Dated: New York, New York
August 28, 2013

/s/ Burton R. Lifland
United States Bankruptcy Judge

8